IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LOUIS A. DENAPLES :
          Plaintiff :
  v. : 3:CV-09-1802
           : (JUDGE VANASKIE)
OFFICE OF THE COMPTROLLER OF THE :
CURRENCY :
          Defendant :

## MEMORANDUM

Louis A. DeNaples has brought this action for declaratory and injunctive relief to challenge action of the Office of the Comptroller of the Currency ("OCC") that he claims was taken in the absence of statutory authority and was arbitrary, capricious, and an abuse of discretion. Specifically, Mr. DeNaples asserts that the OCC wrongfully determined that he had entered into a "pretrial diversion program or similar program" in connection with the dismissal of perjury charges, thereby making it unlawful for him to resume his position as Chairman of the Board of Directors of First National Community Bank (the "Bank") by virtue of the proscription set forth in 12 U.S.C. § 1829(a)(1).[1] The OCC has moved for dismissal of this action for lack of

---

[1] For the convenience of the reader of this Memorandum opinion in electronic format, hyperlinks to the Court's record and to authority cited herein have been inserted. The Court accepts no responsibility for, and does not endorse, any product, organization, or content at any hyperlinked site, or at any site to which that site might be linked. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court. Citations to page numbers refer to the page number of the document on the CM/ECF electronic record.

subject matter jurisdiction. Having concluded that this Court's adjudication of Mr. DeNaples' claims would affect the exercise of authority delegated to the OCC in 12 U.S.C. § 1818, a result foreclosed by Congress in 12 U.S.C. § 1818(i)(1), I will grant the motion to dismiss.

I.  BACKGROUND

Plaintiff joined the Bank's Board of Directors in 1972 and served on the Board for over thirty-five (35) years, becoming Chairman in 1988. (Complaint, Dkt. 1, at ¶ 3.) On January 23, 2008, a grand jury in Dauphin County, Pennsylvania, recommended that the District Attorney institute criminal proceedings against Plaintiff for perjury. (Id. at ¶ 15.) On January 30, 2008, the Dauphin County District Attorney's Office filed a criminal complaint against Plaintiff that charged him with four counts of perjury. (Id. at ¶ 16.) "The charges involved testimony that Mr. DeNaples provided to the Pennsylvania Gaming Control Board in 2006 in the course of obtaining a gaming license for Mt. Airy, No. 1, LLC ("Mount Airy Casino"), which was solely owned by Mr. DeNaples at the time." (Id. at ¶ 17.)

On February 6, 2008, Plaintiff voluntarily took a leave of absence from his duties as Chairman of the Board at the Bank. (Id. at ¶ 19.) On February 8, 2008, two days later, the OCC issued a Notice of Suspension pursuant to 12 U.S.C. § 1818(g)(1) "that prohibited Mr. DeNaples from participating in the conduct of the affairs of the Bank or any other FDIC-insured depository institution."[2] (Id. at ¶ 20.) Plaintiff "complied with the suspension and did not contest

---

[2] In pertinent part, section 1818(g)(1) provides:

it." (Id. at ¶ 21.)

During the course of negotiations regarding the disposition of the charges against him, Plaintiff's counsel made it clear to the District Attorney that he would under no circumstances agree to a disposition of the charges that would require entry into a pretrial diversion or similar program. (Id. at ¶ 22.) On April 15, 2009, the District Attorney's Office and Plaintiff executed an "Agreement for Withdrawal of Charges" in which the District Attorney agreed to withdraw all charges and Plaintiff agreed to take certain action. (Id. at ¶ 23.) Plaintiff alleges that an OCC representative was informed by a prosecutor from the District Attorney's Office that the agreement to resolve the charges did not constitute a pretrial diversion or similar program. (Id.

---

> Whenever any institution-affiliated party is the subject of any information, indictment, or complaint, involving the commission of or participation in--
>
> a crime involving dishonesty or breach of trust which is punishable by imprisonment for a term exceeding one year under State or Federal law . . . the appropriate Federal banking agency may, if continued service or participation by such party posed, poses, or may pose a threat to the interests of the depositors of, or threatened, threatens, or may threaten to impair public confidence in, any relevant depository institution . . . by written notice served upon such party, suspend such party from office or prohibit such party from further participation in any manner in the conduct of the affairs of any depository institution.

18 U.S.C. § 1818(g)(1)(A)(i). The suspension "shall remain in effect until the information, indictment, or complaint referred to in such subparagraph is finally disposed of or until terminated by the agency." 18 U.S.C. § 1818(g)(1)(A)(ii).

3

at ¶ 28.) By Order dated April 16, 2009, the Court of Common Pleas of Dauphin County entered a Nolle Prosequi in Mr. DeNaples' case, thereby effecting a dismissal of the charges.³ (Id. at ¶ 24.)

On April 17, 2009, the OCC Director of Enforcement and Compliance wrote to Mr. DeNaples to inform him that the OCC "ha[d] become aware of your pretrial diversion agreement," and that he was "subject to the prohibitions set forth in 12 U.S.C. § 1829 . . . ."⁴ (Apr. 17, 2009 Letter, Dkt. 21-3, at 1.) The letter further provided that a knowing violation of § 1829 would subject Mr. DeNaples and the Bank to the penalties provided in the statute, i.e., a fine of up to $1,000,000 per day and/or a term of imprisonment of up to five (5) years. 12 U.S.C. § 1829(b). That letter was forwarded to the Bank's counsel. An OCC representative informed the Bank's counsel that "Mr. DeNaples was 'immediately prohibited from further

---

³ The OCC acknowledges that the section 1818(g) suspension from participation in the affairs of the Bank terminated with the dismissal of the criminal charges.

⁴ In pertinent part, section 1829 of Title 12 U.S.C. provides:

> Except with the prior written consent of the [F.D.I.C] –
> (A) any person who has been convicted of any criminal offense involving dishonesty or a breach of trust . . . or has agreed to enter into a pretrial diversion or similar program in connection with a prosecution for such offense, may not –
> (i) become, or continue as, an institution-affiliated party with respect to any insured depository institution;
> (ii) own or control, directly or indirectly, any insured depository institution; or
> (iii) otherwise participate, directly or indirectly, in the conduct of the affairs of any insured depository institution . . . .

12 U.S.C. § 1829(a)(1).

4

service' at the Bank and warned that 'the statute provides substantial penalties against both Mr. DeNaples, as well as the bank, for any violation of this provision.'"[5] (Id. at ¶ 30.)

Mr. DeNaples' counsel responded to the April 17, 2009, OCC letter on June 8, 2009, asserting that the agreement to resolve the charges did not constitute a "pretrial diversion or similar program." (June 8, 2009 Letter, Dkt. 37-7.) The letter from Mr. DeNaples' counsel was accompanied by a legal opinion from a Pennsylvanian lawyer who wrote that the Agreement "was not, in any form, an ARD or pretrial diversion under State law." (Donato Letter, Dkt. 18-4, at 51.) In response, on July 14, 2009, the OCC Director of Enforcement and Compliance sent a letter confirming that the OCC had determined that the agreement was a pretrial diversion or

---

[5] The April 17th letter was not issued pursuant to the OCC's removal authority under 12 U.S.C. § 1818(g)(1)(C), which, in pertinent part, provides:

> If a judgment of conviction or an agreement to enter a pretrial diversion or other similar program is entered against an institution-affiliated party in connection with a crime [involving dishonesty or breach of trust which is punishable by imprisonment for a term exceeding one year under State or Federal law], at such time as such judgment is not subject to further appellate review, the appropriate Federal banking agency may, if continued service or participation by such party posed, poses, or may pose a threat to the interests of the depositors of, or threatened, threatens, or may threaten to impair public confidence in, any relevant depository institution . . ., issue and serve upon such party an order removing such party from office or prohibiting such party from further participation in any manner in the conduct of the affairs of any depository institution without the prior written consent of the appropriate agency.

Section 1818(g)(3) prescribes the process available to an institution-affiliated party to contest a removal order. 12 U.S.C. § 1818(g)(3). Plaintiff was not afforded the process established by this provision.

5

similar program and reiterating that Mr. DeNaples was permanently barred from service at the Bank. (Id. at ¶ 32.) The letter also instructed Mr. DeNaples that he "must take immediate steps to inform the Board of Directors that he may no longer serve in any capacity [at] the Bank, and indicate that his absence is permanent rather than temporary in nature." (July 14, 2009 Letter, Dkt. 21-5, at 6.)

Plaintiff filed this action on September 17, 2009. Plaintiff asserts that jurisdiction lies in this Court pursuant to 28 U.S.C. § 1331, the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202. (Complaint, Dkt. 1, at ¶ 6.) Plaintiff seeks a declaration that the agreement effecting the dismissal of the perjury charges "does not constitute a 'pretrial diversion or similar program' under Section 19" of the Financial Institutions Supervisory Act ("FISA"), 12 U.S.C. § 1829, so that "Section 19's lifetime prohibition is not triggered by the Agreement." (Id. at ¶¶ 40, 42.) Plaintiff also requests that the OCC letters of April 17 and July 14, 2009 "be held unlawful and set aside pursuant to 5 U.S.C. 706." (Id. at ¶ 46.)

On November 20, 2009, Plaintiff filed a Motion for Preliminary Injunction or Final Adjudication on the Merits. (Dkt. 16.) On November 24, 2009, the OCC, acting pursuant to 12 U.S.C. § 1818(b), issued a "NOTICE OF CHARGES" in support of a cease and desist order. (Notice of Charges, Dkt. 37-9, at 2.) The Notice charges that Mr. DeNaples

> has violated, is violating, or has threatened to continue violating . . . 12 U.S.C. § 1829, by failing to resign his position as Chairman of the Board and Director of

6

> the Bank, following [his] agreement to enter into a pretrial diversion or similar program to resolve criminal charges that involved dishonesty or breach of trust.

(Id. at 2-3.) The next day, on November 25, 2009, the OCC filed a Motion to Dismiss the Complaint for Lack of Subject Matter Jurisdiction. (Dkt. 20.) Oral argument on the Motion to Dismiss was held on January 29, 2009.

II.  DISCUSSION

A party seeking affirmative relief in federal court bears the burden of establishing that the court has jurisdiction over the subject matter of the claim. Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991). Plaintiff seeks relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and the APA, 5 U.S.C. §§ 701-706. Plaintiff acknowledges that the Declaratory Judgment Act is not an independent source of federal court jurisdiction. (Opp. Br., Dkt. 36, at 20 n.9.) He asserts, however, that this Court can declare whether the agreement that resolved the state court prosecution constitutes a pretrial diversion or similar program because he has asserted a claim under the APA, a federal statute that brings this matter under the congressional delegation of subject matter jurisdiction for civil actions arising under the laws of the United States. See 28 U.S.C. § 1331. The OCC, while not disputing that this matter would otherwise fall within this Court's federal question jurisdiction under 28 U.S.C. § 1331, argues that Congress withdrew the authority of United States District Courts over this kind of dispute by providing in section 8 of FISA that "except as otherwise provided in this section . . . no court shall have jurisdiction to <u>affect by injunction or otherwise</u> the issuance or

7

enforcement of any notice or order under this section, or to review, modify, suspend, terminate, or set aside any such notice or order."[6] 12 U.S.C. § 1818(i)(1) (emphasis added). Resolution of the jurisdictional question requires consideration of the interrelationship between the cause of action created by the APA and the withdrawal of jurisdiction effected by section 1818(i)(1).

The APA provides for review of a "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. The APA, however, "does not allow judicial review where another statute specifically prohibits it." Hindes v. F.D.I.C., 137 F.3d 148, 163 (3d Cir. 1998) (citing 5 U.S.C. § 701(a)(1)). Thus, there are three issues that are implicated by the OCC jurisdictional challenge: Are the OCC letters of April 17 and July 14, 2009 "final agency action"? Is there an adequate judicial review process established by Congress other than that provided by the APA? And does section 1818(i)(1) specifically bar this action?

Plaintiff argues that the letters do indeed satisfy the test for "final agency action," that no

---

[6] Section 1818 provides for District Court review of matters falling within the purview of that section in three limited circumstances: (1) district courts are granted jurisdiction to set aside, limit or suspend temporary cease and desist and suspension orders issued by the appropriate regulatory authority pending the completion of administrative proceedings, see 12 U.S.C. § 1818(c)(2) and (f); (2) district courts are further granted jurisdiction to enforce orders which have been issued by the appropriate regulatory authority, see 12 U.S.C. § 1818(d); and (3) district courts have authority to enforce subpoenas in connection with proceedings, examinations and investigations initiated under section 1818. See 12 U.S.C. § 1818(n). None of these circumstances exists here. With respect to final orders issued under section 1818, Congress has prescribed that review may be sought only in the applicable Court of Appeals by way of a petition for review. See 12 U.S.C. § 1818(h)(2).

review process other than an action under the APA exists to contest the validity of the OCC determination, and that the OCC action was taken not under section 1818, but under section 1829, rendering inapplicable the jurisdictional bar expressed in section 1818(i)(1).  Plaintiff further argues that § 1818(i)(1) is not operative where, as here, it is claimed that the OCC clearly departed from its statutory authority in issuing the April 17 and July 14 letters, "'thereby expos[ing] the [OCC] to review of administrative action otherwise made unreviewable by statute.'"  (Opp. Br., Dkt. 36, at 35 (quoting Manges v. Camp, 474 F.2d 97, 99 (5th Cir. 1973)).)  The OCC asserts that the letters in question were not "final agency action;" that Mr. DeNaples can obtain judicial review in the Court of Appeals following completion of the cease and desist process in accordance with 12 U.S.C. § 1818(h)(2); and that adjudication of this action would affect the issuance or enforcement of a notice or order issued by the OCC under section 1818, thus implicating the jurisdictional bar of § 1818(i)(1).  In response to the argument that section 1818(i)(1) is inapplicable because it exceeded its statutory authority, the OCC argues that Board of Governors v. MCorp Financial, Inc., 502 U.S. 32 (1991), categorically rejected the applicability of this argument in light of the clarity and breadth of the jurisdictional bar set forth in section 1818(i)(1), coupled with the fact that review will be available in the applicable Court of Appeals following completion of the cease and desist process.  (Reply Br., Dkt. 44, at 15.)

The parties' competing contentions must, of course, be assessed in the context of the specific claims presented and the statutory scheme at issue.  Plaintiff wants this Court to

9

determine whether the agreement that resolved the criminal case brought against him constitutes a "pretrial diversion or similar program" under Pennsylvania law. Under Plaintiff's theory, the agreement does not constitute a "pretrial diversion or similar program" so that the statutory bar to his active participation in the affairs of the Bank expressed in 12 U.S.C. § 1829(a)(1) is not triggered. Plaintiff has moved for preliminary and final injunctive relief to preclude the OCC from implementing its determination that Plaintiff has indeed entered into a "pretrial diversion or similar program."

The OCC argues that resolution of Plaintiff's claims in this action would interfere with its enforcement authority under Section 8 of FISA, 12 U.S.C. § 1818. "The statutory scheme set out in FISA grants federal agencies such as the Office of the Comptroller of the Currency, the Federal Deposit Insurance Corporation, and the Federal Reserve Board wide ranging supervisory and enforcement authority over our nation's banking system." First Nat. Bank of Scotia v. United States, 530 F. Supp. 162, 166 (D.D.C. 1982). Section 8 of FISA applies to banks insured through the FDIC and authorizes the appropriate agency, in this case the OCC, "to bring cease and desist, removal and prohibition actions, and provides the administrative framework for the commencement and determination of such actions." Resolution Trust Corp. v. Ryan, 801 F. Supp. 1545, 1548 (S.D. Miss. 1992). Most relevant here is the authority of the OCC to bring cease and desist proceedings under 12 U.S.C. § 1818(b), and the suspension, removal and prohibition from participation orders in the case of certain criminal offenses set

10

forth in § 1818(g).[7]  Orders issued under the authority granted in § 1818(b), or (g) are reviewable "by the filing in the court of appeals of the United States for the circuit in which the home office of the depository institution is located, or in the United States Court of Appeals for the District of Columbia Circuit . . . a written petition praying that the order of the agency be modified, terminated, or set aside."  12 U.S.C. § 1818(h)(2).  As a general rule, the jurisdiction of the appeals court is exclusive.  (Id.)  Finally, as noted above, Section 1818(i)(1) provides that no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under Section 1818, except as provided in § 1818 itself.  12 U.S.C. § 1818(i)(1).  As explained in Groos National Bank v. Comptroller of Currency, 573 F.2d 889, 894 (5th Cir. 1978), "[t]aken together, these provisions, establish a closely meshed administrative structure through which the Comptroller may curtail unsafe banking practices or legal violations through cease and desist orders that are reviewable in the circuit courts . . . ."

In this case, the OCC commenced cease and desist proceedings pursuant to 12 U.S.C. § 1818(b) only after having issued letters that informed Mr. DeNaples that his participation on the Bank Board violates Section 19 of FISA which prohibits any person who has agreed to

---

[7] The OCC also has "removal and prohibition" authority under 12 U.S.C. § 1818(e) for, inter alia, any violation of any law by any institution-affiliated party.  This authority has not been invoked in this case.  As noted above, the OCC exercised its suspension authority under 12 U.S.C. § 1818(g), which concerns felony charges of crimes involving, inter alia, dishonesty.  As noted infra, Plaintiff contends that the OCC may remove him from his position at the Bank and prohibit his participation in its affairs only under 12 U.S.C. § 1818 (g)(1)(C).

11

enter into "a pretrial diversion or similar program in connection with a prosecution . . ." for "any criminal offense involving dishonesty" from participating, directly or indirectly, in the conduct of the affairs of any insured depository institution," except with the prior written consent of the FDIC. 12 U.S.C. § 1829(a)(1).[8] Plaintiff argues that the letters of April 17 and July 14, 2009, had the effect of precluding his participation in the Bank's governance without being afforded the procedural safeguards set forth in 12 U.S.C. § 1818(g).[9] Plaintiff contends that the OCC exceeded its statutory authority by purporting to remove him from the Bank Board without following the process established by § 1818(g).

---

[8] This statutory prohibition differs in some significant ways from the authority conferred upon the OCC to suspend and remove an "institution affiliated party" in the case of certain criminal offenses. Specifically, while § 1829(a) extends to "any criminal offense involving dishonesty," the authority to suspend or remove an "institution-affiliated party" is limited to crimes involving dishonesty that are punishable by imprisonment for a term exceeding one year. See 12 U.S.C. § 1818(g)(1). Moreover, while the bar expressed in § 1829(a) is automatic, unless the FDIC consents otherwise, a person who has been convicted or entered into an agreement to enter a pretrial diversion or other similar program for an offense involving dishonesty that carries a prison term exceeding one year may be removed by the OCC only upon a finding that "continued service or participation by such party posed, poses, or may pose a threat to the interests of the depositors of, or threatened, threatens, or may threaten to impair public confidence in, any relevant depository institution . . . ." 12 U.S.C. § 1818(g)(1)(C). In addition, as noted in FDIC v. Mallen, 486 U.S. 230, 238 (1988), a § 1818(g) action may have more substantial consequences than removal under § 1829 in that a person removed pursuant to § 1818(g) would be exposed to criminal penalties by voting for a director of the affected institution, whereas § 1829 does not impose a similar prohibition.

[9] Plaintiff asserts that, in contrast to a cease and desist proceeding, the administrative process governing § 1818(g) removals is much more streamlined, enabling the affected party to challenge a removal order in court within ninety days of its issuance. (Opp. Br., Dkt. 36, at 27.) Plaintiff's counsel states that, in his experience, cease and desist proceedings typically exceed one year before being ripe for judicial review.

12

Plaintiff's challenge to the procedural aspect of the April 17 and July 14 OCC letters has considerable force. The letters bear the hallmarks of "final agency action." In this regard, the letters articulate a "definitive statement" of the OCC's position with concrete legal consequences. See Hindes, 137 F.3d at 162. The July 14, 2009 letter purported to impose on Mr. DeNaples an affirmative obligation – to take immediate steps to inform the Board of Directors that he may no longer serve in any capacity. The April 17 letter warned Plaintiff of the substantial criminal sanctions attending a knowing violation of § 1829. Moreover, both letters purported to require immediate compliance and had a direct impact on Mr. DeNaples. Significantly, the OCC itself has described on its website the April 17 letter as an "1829 Removal." (Ex. D, Dkt. 37-5, at 2.) Moreover, the website identifies Mr. DeNaples as a person who has "been the subject of OCC enforcement action." Id.

At oral argument, counsel for the OCC described the April 17 and July 14 missives as "warning letters." Notably, however, there is no language in the letters that would apprise a reasonable person that the OCC Enforcement and Compliance Director was simply serving fair warning that appropriate action would be taken if Mr. DeNaples sought to resume his position as Bank Board Chairman. Nor is there anything in the correspondence that suggests an intent simply to advise Mr. DeNaples of a tentative position taken by the OCC.

It is clear that the letters were not issued under § 1818(g). It is also clear that no judicial review mechanism is mentioned in the letters or is otherwise available. Accordingly, absent a

13

legislative bar on judicial review, the validity of the letters purporting to effect the removal of Mr. DeNaples from the Bank Board of Directors would be available under the APA.

The dispositive question here, therefore, is whether § 1818(i)(1) nonetheless deprives this Court of the authority to proceed. "When Congress decides to withdraw jurisdiction from the lower federal courts, the judicial inquiry is confined to ascertaining whether the action before the Court falls within the class of controversies that Congress intended to remove from judicial purview." First Nat. Bank of Scotia, 530 F. Supp. at 167.

Congress has prescribed a capacious bar to judicial review of matters falling within the regulatory authority expressed in Section 8 of FISA. To reiterate, exercise of jurisdiction that "would affect by injunction or otherwise" the issuance or enforcement of any notice or order under section 8 is foreclosed. 12 U.S.C. § 1818(i)(1).

The relief sought by Plaintiff falls within this broad prohibition. Plaintiff seeks a determination by this Court that he did not enter into a "pretrial diversion or similar program" in connection with the dismissal of the criminal charges brought against him. He also seeks an injunction to prohibit the OCC from preventing him from resuming his position on the Bank Board. The OCC, however, plainly has the authority under Section 8 to take action to remove Plaintiff from the Board upon a finding that he did indeed enter into a pretrial diversion or similar program in connection with the resolution of the perjury prosecution. The OCC is in the process of taking such action through a cease-and-desist proceeding commenced under

14

Section 8(b) of FISA. Accordingly, adjudication of the claims presented in this matter would affect by injunction or otherwise the exercise of the authority delegated to the OCC in Section 8.

The April 17 and July 14 letters were not, of course, issued pursuant to Section 8 of FISA. But Section 8 of FISA establishes the enforcement mechanisms available to the OCC. That is, the OCC may enforce the Section 19 bar only by pursuing appropriate action under Section 8.

The fact that an enforcement proceeding was not pending when this action was brought does not render Section 1818(i)(1) irrelevant. Courts have applied the § 1818(i)(1) bar even where administrative proceedings under § 1818 were not pending. For example, in Resolution Trust Corp. v. Ryan, supra, the Office of Thrift Supervision had threatened enforcement proceedings against two individuals. The affected persons sought a declaratory judgment to the effect that they had committed no act that would bar them from employment in financial institutions regulated and insured by the United States. 801 F. Supp. at 1549. The court held that it had no jurisdiction to consider the claim for declaratory relief as it would affect action that could be taken under Section 1818. Id. at 1549-50; see also Hindes, 137 F.3d at 164. (Section 1818(i)(1) "is not restricted to precluding judicial review which would interfere with an ongoing administrative proceeding.")

In First National Bank of Chicago v. Steinbrink, 812 F. Supp. 849 (N.D. Ill. 1993), an

15

action was brought to obtain a declaratory judgment that a letter issued by the OCC constituted invalid final agency action. The court ruled that even if the letter in question was considered final agency action, the judicial review function could properly be exercised by the applicable court of appeals, reasoning that the letter, issued after a cease-and-desist proceeding had been commenced, was an integral part of the administrative proceedings. The court explained that review under the APA was available only if there was no other adequate judicial remedy and that judicial review upon completion of the cease-and-desist proceedings by a court of appeals plainly afforded an adequate avenue of judicial review. Id. at 853-54. Significantly, the court held that the added expense and delay attending the administrative proceedings did not constitute "'injury sufficient to justify judicial intervention into pending agency proceedings.'" Id. at 854 (quoting Abercrombie v. Comptroller, 833 F.2d 672, 677 (7th Cir. 1987)).

Although this litigation was commenced prior to the issuance of the cease-and-desist Notice, it is clear that the April 17 and July 14 letters are integral parts of those administrative proceedings. The Notice of Charges for issuance of a cease-and-desist order refers to those letters. It is also clear that Plaintiff may seek judicial review of the dispositive question – whether he has entered into a pretrial diversion or similar program – upon completion of the cease-and-desist proceedings.

Plaintiff argues that the OCC may only proceed by way of a removal proceeding under § 1818(g). Plaintiff may indeed be correct in this assertion, but the argument does not defeat the

16

application of § 1818(i)(1).  Succinctly stated, acceptance of Plaintiff's argument would plainly affect the issuance of the OCC notice under Section 1818(b).

Judicial review of a final agency action by an aggrieved person may be cut off where "there is persuasive reason to believe that such was the purpose of Congress." Abbott Labs., Inc. v. Gardner, 387 U.S. 136, 140 (1967).  In this case, there is indeed persuasive reason to believe that Congress intended to foreclose judicial interference with actions taken by the OCC under Section 8 of FISA, with judicial review coming only after the conclusion of those proceedings and only in the courts of appeals.  As stated in First National Bank of Scotia, 530 F. Supp. at 169, in the context of giving effect to 12 U.S.C. 1818(i)(1):

> the presumption in favor of judicial review of agency action is in no sense threatened by a congressional determination to endow the Circuit Courts of Appeals with exclusive review authority over a limited range of agency decisions.  The presumption of reviewability spelled out by the Supreme Court in Abbott Laboratories and Dunlop was not intended to give litigants a vested right to obtain review of agency action at any level of the federal judiciary; one forum is decidedly sufficient.

Plaintiff, citing Leedom v. Kyne, 358 U.S. 184 (1958), argues that § 1818(i)(1) should not be given effect here because the April 17 and July 14 letters were issued in the absence of any statutory authority.  In Board of Governors v. MCorp Financial, Inc., 502 U.S. 32 (1991), the Court rejected the application of the holding in Kyne to § 1818(i)(1).  The Court explained that, unlike the circumstances in Kyne, the FISA statutory scheme "expressly provides . . . a meaningful and adequate opportunity for judicial review [of contested action]." Id. at 43.  The

17

Court also rejected the application of the rule expressed in Kyne because of "the clarity of the congressional preclusion of review in FISA." Id. at 44. Writing for the unanimous Court, Justice Stevens explained:

> Kyne stands for the familiar proposition that only upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review. As we have explained . . ., [Section 1818(i)(1)] provides us with clear and convincing evidence that Congress intended to deny the District Court jurisdiction to review and enjoin the Board's ongoing administrative proceedings.

Id.

The Court's holding in MCorp is controlling here. To allow a litigant to seek injunctive relief on the grounds that the agency has chosen the wrong enforcement mechanism would enmesh the federal courts in the administrative proceedings that Congress sought to insulate from judicial intervention until those proceedings had concluded. "[T]his Court cannot exercise jurisdiction where the clear result of granting the relief sought . . . would be to affect otherwise the issuance or enforcement of any administrative order and to 'circumvent [ ] the administrative machinery put in place by § 1818 to permit the appropriate regulatory agency – [] the Comptroller of the Currency – to proceed with enforcement actions." First Nat'l Bank of Chicago, 812 F. Supp. at 855.

III. CONCLUSION

For the above-stated reasons, Defendant's Motion to Dismiss for lack of subject matter

jurisdiction will be granted.[10]  An appropriate Order follows.[11]

                                                             <u>s/ Thomas I. Vanaskie</u>
                                                            Thomas I. Vanaskie
                                                            United States District Judge

---

[10] To be sure, the determination in this case is limited to the absence of authority to issue declaratory and injunctive relief.  Our Court of Appeals has indicated that the bar to judicial review expressed in Section 1818(i)(1) "on its face would not affect an appropriate constitutional claim for damages."  Hindes, 137 F.3d at 165.

[11] Because subject matter jurisdiction is lacking, Plaintiff's motion for a preliminary injunction will be dismissed.

19

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LOUIS A. DENAPLES | : | |
|     Plaintiff | : | |
| v. | : | 3:CV-09-1802 |
| | : | (JUDGE VANASKIE) |
| OFFICE OF THE COMPTROLLER OF THE CURRENCY | : | |
|     Defendant | : | |

## ORDER

NOW, THIS 4th DAY OF FEBRUARY, 2010, for the reasons set forth in the foregoing Memorandum, IT IS HEREBY ORDERED THAT:

1. Defendant's Motion to Dismiss for lack of subject matter jurisdiction (Dkt. Entry 20) is GRANTED.

2. Plaintiff's Motion for Preliminary Injunction (Dkt. Entry 16) is DISMISSED.

3. The Clerk of Court is directed to mark this matter CLOSED.

                                          s/ Thomas I. Vanaskie
                                          Thomas I. Vanaskie
                                          United States District Judge